UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDI DAMBOBA,

        Plaintiff,

v.                                      Case No. 1:13-cv-940
                                      Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

                                      /

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which granted in part his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on September 3, 1961 (AR 1296).[1] Plaintiff alleged a disability onset date of August 22, 2008 (AR 266, 1291). He completed the 11th grade and had previous employment working for a cleaning service and as a taxi driver (AR 271). Plaintiff identified his disabling conditions as: diabetes, poor circulation in legs, high blood pressure, and leg pain (AR 270). This appeal involves the decision of Administrative Law Judge (ALJ) Nicholas M. Ohanesian, who reviewed plaintiff's claim *de novo* and entered a decision on June 22, 2012, in which he found that plaintiff has been disabled beginning on September 2, 2011 (AR 1288-96). This decision, which

---

[1] Citations to the administrative record will be referenced as (AR "page #").

was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

The ALJ found that plaintiff was disabled at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 22, 2008 and that he met the insured status requirements under the Act through December 31, 2014 (AR 1290-91). At the second step, the ALJ found that plaintiff had severe impairments of: degenerative disc disease of the cervical and lumbar spine; diabetes mellitus with neuropathy; gastroesophageal reflux disease (GERD); gastritis; and hypertension (AR 1291). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 1291).

The ALJ decided at the fourth step that plaintiff had:

> . . . [T]he residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can lift up to 10 pounds occasionally; can stand and/or walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks; must have a sit-stand option that allows him to alternate sitting or standing positions at 15-minute intervals throughout the day; can occasionally climb ramps or stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance (with a hand-held assistive device), stoop, kneel, crouch, and crawl; is limited to jobs that can be performed while using a hand-held assistive device at all times when standing so that the contralateral upper extremity can be used to lift and carry up to exertional limits. He must avoid concentrated exposure to extreme cold and heat, humidity, and excessive vibration and must avoid all exposure to hazardous machinery and unprotected heights.

(AR 1292). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 1293).

At the fifth step, the ALJ determined that <u>prior to September 2, 2011</u>, the date plaintiff's age category changed, there were unskilled, sedentary jobs that existed in significant numbers in the national economy that he could perform (AR 1294). Specifically, plaintiff could perform the following work in the regional economy (the State of Michigan): bench assembler (4,000 jobs); parts checker (3,500 jobs); and information clerk (3,600 jobs) (AR 1294-95). However, <u>beginning on September 2, 2011</u>, the date plaintiff's age category changed, considering his age, education, and work experience, plaintiff was found "disabled" by direct application of Medical-Vocational Rule 201.10 (AR 1295). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, prior to September 2, 2011, but became disabled on that date (AR 1295-96).

### III. ANALYSIS

Plaintiff raised two related issues on appeal:

**A.    The ALJ misinterpreted the opinions of the treating physician by finding that the opinions of the treating physician supported the conclusion that plaintiff was capable of the performance of full-time work.**

**B.    The ALJ failed to provide "good reasons" for rejecting the opinions of the treating physician regarding disability.**

#### 1.    Plaintiff's contentions

Plaintiff contends that the ALJ misinterpreted the findings of a May 7, 2012 residual functional capacity (RFC) evaluation endorsed by his treating physician, Kristopher Brenner, D.O., and that the ALJ failed to give good reasons for rejecting Dr. Brenner's opinions. Plaintiff's appeal involves the following opinions: Dr. Brenner's letters in 2009 and 2010 (Exhibit 8F); Dr. Brenner's

5

sworn statement on June 11, 2010 (AR 794-808) (Exhibit 11F); and Dr. Brenner's endorsement of an RFC evaluation performed in April 2012 (AR 932) (Exhibit 18F).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting

the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### 2. Dr. Brenner's letters

On February 3, 2009, Dr. Brenner signed a letter stating that plaintiff was "medically incapacitated to work the next 6 months" due to uncontrolled type II diabetes, hypertension, and abdominal pain (AR 504). On July 22, 2009, the doctor signed a similar letter stating that plaintiff was medically incapacitated to work the next 6 months due to the uncontrolled diabetes and hypertension (AR 503). Then, on February 2, 2010, the doctor signed similar letter stating that plaintiff was medically incapacitated to work due to the uncontrolled diabetes, hypertension and abdominal pain (AR 502).

### 3. Dr. Brenner's sworn statement

On June 11, 2010, Dr. Brenner testified that plaintiff would not be able to perform his previous jobs or a "relatively simple job":

Q. Based on your history of contacts with this man over many years, the studies that you have ordered and have reviewed, your opportunities to examine and deal with him, what is your opinion about his ability to work on a regular basis?

A. I find for the jobs that he has had in the past and that I'm aware of, that he is going to have many missed days of work due to his above complaints, the cervical and lumbar spine, and his abdominal pain. I don't know that he has had a month free of discomfort in quite some years. He does require daily medications to manage his conditions; and when he does more than just simple activities of daily living, these seem to worsen his problem. I find it hard to believe that what he has been trained to do he would be able to do pain free, successful, without missed intermittent days of work.

> Q. Would that apply to a relatively easy job as well? That is to say, would that be precluded on the basis of these problems?
>
> A. I would say so both when we reference just the fact of lifting certain weights, more so stooping, bending, reaching, twisting, just the different ergonomic positions people have to do for certain jobs, especially with his being in the environmental services and cleaning industry.
>
> Q. Let's assume he had a relatively simple job. Do you think that based on the totality of conditions, he would still likely miss more than two days a month of work?
>
> A. I would say so.

(AR 805-06).

### 4.   Dr. Brenner's endorsement of an RFC evaluation

On May 7, 2012, Dr. Brenner endorsed an RFC evaluation performed by physical therapist Barbara Rounds (AR 926-32). Ms. Rounds summarized her evaluation with the following observations:

> **Overall level of Work**: The client appears functioning within the SEDENTARY level of work as defined by the U.S. Department of Labor: Dictionary of Occupational Titles.
>
> **Tolerance for Sustained Work Activity**: The client does NOT appear capable of engaging in full-time sustained employment. If the client were required to work 40 hours per week, 8 hours per day in a competitive work environment he would most likely have limitations as to his work pace & need a sit-stand-rest option as symptoms dictate. The client appears best suited for part-time work as opposed to fulltime employment.

(AR 931).

The RFC evaluation included the following restrictions. Plaintiff could never squat, crouch, lift from floor to waist, lift from waist to overhead, or carry (2 handed) (AR 932). Plaintiff could occasionally sit, stand, walk, climb stairs, bend, stoop, and reach overhead (AR 932).

8

Plaintiff could frequently reach forward and constantly grip (AR 932). Finally, plaintiff could occasionally lift 15 pounds at waist level and "unilateral carry" 5 pounds (AR 932).

### 5. Discussion

The ALJ addressed Dr. Brenner's opinions as follows:

> In 2008 and 2009, Dr Brenner made a number of short-term disability pronouncements (Exhibit 8F). In June 2010, Dr. Brenner offered the opinion that the claimant would likely miss more than two days a month of work (Exhibit 11F/13). On May 7, 2012, Dr. Brenner agreed with the functional recommendation of the occupational therapist that the claimant was essentially limited to sedentary work where the claimant was afforded a sit-stand option. The occupational therapy evaluation additionally disclosed that the claimant relied upon a cane as he performed the evaluation (Exhibit 18F/6-7).
>
> Great weight is given to the treating medical source statements at Exhibits 8F, 11F, and 18F regarding the limitations prescribed. Although I do not entirely agree with the primary care physician who has opined that the claimant is totally disabled, the overall objective evidence of record supports a finding that the claimant would be capable of doing sedentary, sit-stand work. Less weight is given to the State agency medical source statements at Exhibits 3F and 4F inasmuch as those statements reflect a snapshot view of the claimant's functioning and because of the collective inability to look at the claimant's functioning in longitudinal fashion.

(AR 1293).[2]

First, plaintiff contends that the ALJ incorrectly interpreted Dr. Brenner's endorsement of the May 7, 2012 RFC evaluation, by concluding "that the claimant was essentially limited to sedentary work where the claimant was afforded a sit-stand option." Plaintiff's Brief at p. 11. The Court finds no error in the ALJ's statement. As discussed, Ms. Rounds made these very conclusions as to plaintiff's exertional limitations, finding that plaintiff was functioning within the sedentary level of work and needed a sit-stand-rest option (AR 931). *See* 20 C.F.R. §§

---

[2] The Court notes that while the ALJ referred to the doctor's "short term disability pronouncements" in 2008 and 2009, plaintiff addresses the pronouncements (i.e., letters) issued in 2009 and 2010.

404.1569a(b) and 416.969a(b) (exertional limitations include sitting, standing, walking, lifting, carrying, pushing, and pulling).

Second, plaintiff contends that the ALJ failed to give good reasons for rejecting Dr. Brenner's opinions. Specifically, plaintiff contends that the ALJ failed to explain "exactly what 'overall objective evidence of record' supported his conclusion that [plaintiff] was capable of doing sedentary work with a sit/stand option" and why Dr. Brenner's opinions regarding disability prior to September 2011 are not entitled to controlling weight. Plaintiff's Brief at p. 13. The ALJ gave good reasons for concluding that plaintiff could perform sedentary work with a sit/stand option, noting that Dr. Brenner agreed with those exertional limitations when he endorsed Ms. Rounds' April 2012 RFC evaluation.

The Court, however, agrees with plaintiff that the ALJ did not provide good reasons for failing to give the Dr. Brenner's pre-September 2011 opinions controlling weight. Nevertheless, in this instance, the Court finds the ALJ's failure to provide good reasons to be harmless error. "[A]n agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Wilson*, 378 F.3d at 546-47. As the party attacking the agency's determination, plaintiff has the burden of establishing that the error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009). Plaintiff has failed to meet this burden. While Dr. Brenner felt that plaintiff was temporarily unable to work for 6-month intervals in 2009 and 2010, his letters do not establish that plaintiff suffered from a disabling impairment under the Social Security Act. Although Dr. Brenner was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1) ( "[a]

10

statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984).

In addition, Dr. Brenner's opinion from June 2010 did not establish a basis for finding that plaintiff was disabled. While Dr. Brenner opined that plaintiff could not perform work, his opinion was limited to plaintiff's past work in the environmental services and cleaning industry (AR 805-06). This is consistent with the ALJ's decision, which found at step four that plaintiff could not perform his past relevant work (AR 1293). Finally, while Dr. Brenner agreed with plaintiff's counsel that plaintiff would "likely miss more than two days a month of work" at "relatively simple job," neither the doctor nor counsel defined the term "relatively simple job" in the context of the limitations noted by the doctor (AR 805-06). Accordingly, these claims of error are denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 29, 2014                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge